**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

JOSE JESUS CASTREJON,             :

      Petitioner,            :

vs.                       : CIVIL ACTION NO. 11-0113-KD-C

UNITED STATES OF AMERICA,    : CRIMINAL ACTION NO. 08-0094-KD

      Respondent.

## REPORT AND RECOMMENDATION

Petitioner, Jose Jesus Castrejon, has filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 77). This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Following consideration of all relevant pleadings in this case, it is recommended that Castrejon's § 2255 motion be **DENIED**.

## FINDINGS OF FACT

1.    On March 18, 2008, Castrejon was charged, by criminal complaint, with possessing with the intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). (Doc. 1.) Petitioner was arrested that same day. (*See* Docs. 2-6.)

2.    On March 27, 2008, Castrejon was charged by indictment with two counts of possessing with intent to distribute more than 50 grams of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and one count of conspiring to possess with the intent to distribute more

than 500 grams of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 846. (Doc. 11.)

3.     Castrejon was produced for a debriefing interview on or about June 18, 2008 (*see* Doc. 22) and, on June 27, 2008, Chief Judge Callie V.S. Granade entered an order scheduling Castrejon's change of plea to June 30, 2008 (Doc. 25). That same date, approximately one hour after entry of Judge Granade's order, petitioner and the government filed a plea agreement and factual resume with the Court. (Docs. 26 & 27.) The plea agreement reads, in relevant part, as follows:

## PLEA AGREEMENT

The defendant, represented by his counsel, and the United States of America have reached a Plea Agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

## RIGHTS OF THE DEFENDANT

1.     The defendant understands his rights as follows:

a.     To be represented by an attorney;

b.     To plead not guilty;

c.     To have a trial by an impartial jury;

d.     To confront and cross-examine witnesses and to call witnesses and produce other evidence in his defense;

e.     To not be compelled to incriminate himself.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

2.      The defendant waives rights b through e, listed above, and pleads guilty to Count 1 of the Indictment, charging a violation of Title 21, United States Code, Section 846, conspiracy to possess with intent to distribute methamphetamine.

.     .     .

3.      The defendant expects the Court to rely upon his statements here and his response to any questions that he may be asked during the guilty plea hearing.

4.      The defendant is not under the influence of alcohol, drugs, or narcotics. He is certain that he is in full possession of his senses and mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow.

5.      The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. He has discussed the facts of the case with his attorney, and his attorney has explained to the defendant the essential legal elements of the criminal charges which have been brought against him. The defendant's attorney has also explained to the defendant his understanding of the United States' evidence.

6.      The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charges beyond a reasonable doubt. The defendant and his counsel have discussed possible defenses to the charges. The defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice of his attorney.

7.      A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that the Factual Resume is true and correct.

8.      This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations apart from those set forth in this Plea Agreement. There have been no promises from anyone as to the particular sentence that the Court may impose. The

defendant avers that he is pleading guilty because he knows that he is guilty.

## PENALTY

9.     The maximum penalty the Court could impose as to Count 1 of the Indictment is:

        a.     10 years to life imprisonment;

        b.     A fine not to exceed $4,000,000;

        c.     A term of supervised release of 5 years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release; [and]

        d.     A mandatory special assessment of $100.

## SENTENCING

10.     The Court will impose the sentence in this case. The United States Sentencing Guidelines apply in an advisory manner to this case. The defendant has reviewed the application of the Guidelines with his attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant understands that he will not be allowed to withdraw his guilty plea if the applicable guideline range is higher than expected, if the Court departs from the applicable advisory guideline range, or if the Court imposes a sentence notwithstanding the Guidelines.

11.     The United States may provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

12. The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

13. Both the defendant and the United States are free to allocute fully at the time of sentencing.

.        .        .

## UNITED STATES' OBLIGATIONS

15. The United States will not bring any additional charges against the defendant related to the facts underlying the Indictment and will move to dismiss the remaining counts in the Indictment as to the defendant at sentencing. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

## APPLICATION OF U.S.S.G. § 5K1.1 AND/OR FED.R.CRIM.P. 35

16. The defendant agrees to cooperate with the United States under the following terms and conditions:

a. The defendant shall **fully, completely, and truthfully** respond to all questions put to him by law enforcement authorities regarding the underlying facts of the offenses with which he is charged, as well as the underlying facts of **any** criminal offenses, state or federal, of which he has information or knowledge.

b. The defendant acknowledges that he understands that he shall provide **truthful and complete** information regarding **any** offense about which he has knowledge or information regardless of whether or not law enforcement authorities question him specifically about any such offense. This provision requires the defendant to divulge all information available to him even when law enforcement authorities do not know about the defendant's involvement, knowledge or information relating to any particular offense. This requirement extends to **any and all persons** about whom the defendant has such knowledge or information.

.      .      .

g.      If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, a decision specifically reserved by the United States in the exercise of its sole discretion, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable, and Title 18, United States Code, Section 3553(e). The United States specifically reserves the right to make the decision relating to the extent of any such departure request made under this agreement based upon its evaluation of the nature and extent of the defendant's cooperation. The defendant understands that the United States will make no representation or promise with regard to the exact amount of reduction, if any, the United States might make in the event that it determines that the defendant has provided substantial assistance. The defendant understands that a mere interview with law enforcement authorities does not constitute substantial assistance for this purpose. The defendant also understands that should he provide untruthful information to the United States at any time, or should he fail to disclose material facts to the United States at any time, the United States will not make a motion for downward departure. If the defendant's effort to cooperate with the United States does not amount to substantial assistance as determined solely by the United States, the United States agrees to recommend to the district court judge who sentences  the defendant that the defendant receive a sentence at the low end of the applicable advisory guideline range *or the minimum sentence as required by statute*, whichever is applicable.

.      .      .

## LIMITED WAIVER OF RIGHT TO APPEAL SENTENCE

17.      The defendant acknowledges that he is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. In exchange for the recommendations made by the United States in this Plea Agreement, the defendant knowingly and voluntarily waives the right to appeal any sentence imposed in this case.  "Any sentence imposed"

includes any proceeding relating to the modification or revocation of the supervised release term.

18.     With the limited exceptions noted below, the defendant also waives his right to challenge any sentence so imposed, or the manner in which it was determined, in any collateral attack, including but not limited to, a motion brought under 28 U.S.C. § 2255.

19.     The defendant reserves the right to contest in an appeal or post-conviction proceeding any of the following:

          a.     Any punishment imposed in excess of the statutory maximum;

          b.     Any punishment that constitutes an upward departure from the guideline range; or

          c.     A claim of ineffective assistance of counsel.

20.     In addition, the defendant reserves the right to petition the Court for resentencing pursuant to 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the defendant's sentence.

(*Id*. at 1, 2-6, 7-8 & 9-10 (emphasis supplied).) Appearing before Castrejon's signature line on page 11 of the agreement is this paragraph: "I have consulted with my counsel and fully understand all my rights with respect to the offenses charged in the Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume,[1] incorporated herein, is true and accurate in every respect, and that had

---

[1] The Factual Resume, which Castrejon also signed, reads as follows:

The United States of America, by and through the undersigned Assistant United States Attorney, and the defendant, by and through his attorney of record, agree and stipulate that the Government can prove the following facts beyond a reasonable doubt:

**Elements of the offense**

**Count one**: 21 U.S.C. § 846, conspiracy to possess with intent to distribute methamphetamine, a Schedule II controlled substance.

There are two elements to this offense: first, that two or more individuals came to a mutual understanding to commit an unlawful act, in this case, the possession with intent to distribute the controlled substances as charged; and second, that the defendant, knowing of the unlawful purpose of the plan, knowingly and intentionally joined in the plan. The Government has alleged that more than 500 grams of methamphetamine were involved in the conspiracy.

**Facts**

On February 29, 2008, Sgt. Jeff Dunn and Corporal Jacob Hill met with a married couple who were confidential and reliable informants. This meeting was for the purpose of purchasing methamphetamine from a Hispanic male subject known as "Amigo," subsequently identified as Jose Jesus Castrejon[.] The confidential and reliable informants had purchased methamphetamine from Castrejon in the past on several occasions, for a total of about two ounces. On numerous occasions Castrejon ha[d] driven a silver Toyota Camry that had body

(Continued)

damage on the hood and right rear passenger side. Sgt. Dunn and Cpl. Hill met with the confidential informants at approximately 5:30 p.m. A recorded phone call was made to Castrejon to set a time and place for the narcotic transaction. The arrangement was for Castrejon to bring an ounce of methamphetamine to the confidential informants and for the informants to pay off a three hundred dollar drug debt. Castrejon agreed to meet at the pizza place in Lillian around 6:30 p.m. The officers provided the informants with $1,400 in prerecorded U.S. currency and fitted them with an audio transmitter and recorder.

At approximately 6:23 p.m., the confidential informants left the meeting area and headed toward the meeting location in Lillian with investigators following. At approximately 6:36 p.m., the confidential informants arrived at the meeting location. Cpl. Hill went to an adjacent parking lot to monitor the transaction from a distance and await Castrejon's arrival. Sgt. Dunn observed the confidential informants from a distance while they were parked. After some time the confidential informant called Castrejon to find out how much longer it would take for him to show up. Castrejon stated that he was coming over the Lillian Bridge and would be there shortly. At approximately 7:13 p.m., a Toyota Camry driven by Castrejon, pulled into the parking lot adjacent to the gas station where the informant[]s were waiting. Castrejon was several parking places down from Cpl. Hill. He heard over the transmitter the confidential informant's phone ringing. Castrejon was calling . . . . He could hear over the transmitter that Castrejon wanted the confidential informants to come to the adjacent parking lot to meet with him there.

Castrejon moved his Camry to the parking place in front of Cpl. Hill's vehicle. Cpl. Hill then saw the confidential informants pull into the parking lot and park next to the Camry. Castrejon got out of the Camry and entered the confidential informant[s'] vehicle. Cpl. Hill could hear conversation between Castrejon and the confidential informants. Both parties talked about how much money was owed for past narcotic sales, and the confidential informant gave Castrejon three hundred dollars for the past debt. The confidential informant[s] and Castrejon continued talking about narcotics and how much methamphetamine Castrejon brought on this occasion. They also talked about prices of methamphetamine for multiple ounces. After the sale was complete, Cpl. Hill watched Castrejon get out of the confidential informants['] vehicle and enter the Camry. The tag on the Camry was from the state of Kansas, 121 AIU. A registration check revealed that this tag is registered in the names of Cecilia Reyes [and] Jose Aguinaga. At approximately 7:19 p.m., Castrejon left the parking lot and headed south on County Road 99. Cpl. Hill followed the confidential informants back to the original meeting location.

(Continued)

9

When Cpl. Hill arrived at the meeting location, he took possession of a black plastic bag containing suspected methamphetamine from the confidential informants. The substance inside field-tested positive for the presence of methamphetamine. As he questioned the confidential informants about the transaction, their phone rang. The call was from Castrejon[.] Castrejon stated that he left his phone in the back of the informant[s'] vehicle and he wanted the informant[s] to bring it to the gas station at County Road 95. The confidential informant[s] still had the audio transmitter and recorder in place. At approximately 7:30 p.m., Cpl. Hill followed the confidential informants to the gas station at County Road 95 and U.S. Highway 98 in Elberta. When the confidential informants pulled into the gas station, they saw Castrejon's Camry at a gas pump and Castrejon inside the store. Cpl. Hill pulled into the gas station and entered the store as well. Inside the store, Cpl. Hill saw Castrejon standing at the cash register buying what appeared to be minutes for his phone. Cpl. Hill made a purchase while standing next to Castrejon and then he left the store. Castrejon left the store and apparently saw the confidential informants. Castrejon approached their vehicle and retrieved his phone. Cpl. Hill then followed the confidential informants back to the original meeting location. One of the informants [was asked to] wr[i]te a voluntary statement about what happened during these events, and she complied. The video evidence depicts, among other things, a brief glimpse of Castrejon during the transaction. The audio reflects his conversation with the informants.

During the week of March 10, 2008, the informant[s] had additional conversations with Castrejon, in which they discussed an upcoming drug deal involving three ounces of methamphetamine. There were discussions about conducting the deal on March 14, and on March 15, 2008, Castrejon t[elling] the informant[s] he could get five ounces. In later conversations that day, however, Castrejon told the informant[s] that he was down to three and [a] half ounces. Arrangements were finalized for a subsequent transaction on March 17. The informant[s] and Castrejon agreed on four ounces of methamphetamine for $1,600 per ounce, and the deal was to take place at a service station at the intersection of County Road 87 and Highway 90. The informants were searched and one was equipped with electronic devices through which the officers could record and monitor the conversations.

Surveillance agents arrived at the service station at about 5:50 p.m. The informants pulled up to that location as Sgt. Dunn and Cpl. Hill followed them. Castrejon arrived and the officers observed as he and the informant[s] met to discuss the deal. Castrejon wanted the informant[s] to follow him to a residence off Whispering Pines Drive. The informant told Castrejon that he was afraid of being robbed, and that he was reluctant to travel to another location. Castrejon

(Continued)

left, and after discussion between the informants and the officers, the officers asked the informant [husband] to call Castrejon back to further negotiate about traveling to the residence. In their ensuing discussion, the informant agreed to leave his wife and the money for the drugs at the service station and follow Castrejon to the residence in his own vehicle. The informant followed Castrejon as they drove to a trailer on Whispering Pines Drive. The informant met with Castrejon there, and Castrejon pulled out a bag of methamphetamine and weighed it. The informant observed that there were other Hispanic males present. The informant confirmed the weight and told Castrejon that he would return to the service station to get his wife and the money.

The informant left the residence and met with Cpl. Hill and other officers. When Castrejon called him back to arrange for the exchange, they agreed to meet at the intersection of Greek Cemetery Road and Whispering Pines Drive. The informant was given $4,800 in pre-recorded currency, and surveillance agents followed him to the meeting spot. Castrejon was parked on the side of the road there, with the hood up on his vehicle, as if he was having mechanical trouble. The informant pulled in front of Castrejon's vehicle and parked. They exchanged the money for the drugs and our arrest team moved in. Castrejon was arrested.

"Amigo" identified himself as Jose Jesus Castrejon. Cpl. Hill asked Castrejon whether he spoke English. He said he understood English and that he had been in the United States for 22 years. Cpl. Hill advised him of his rights, and he said he understood them. He agreed to waive his rights and answer questions. He said he was trying to make extra money by selling the drugs. He said he thought he was selling cocaine rather than methamphetamine. He said the drugs came from a black male in Pensacola whose name he did not know. He said he did not know how much money he was supposed to get for the drugs, but he was supposed to take the money back to the black male in Pensacola. He also said he did not have a phone number by which to contact the black male. The pre-recorded currency the officers had provided the informant for the purchase of the drugs was recovered from Castrejon's right front pocket. The methamphetamine was recovered from the informant, and it contained approximately four ounces of a substance that field-tested positive for the presence of methamphetamine.

Sgt. Dunn recognized Castrejon's name from a previous investigation involving methamphetamine trafficking during 2006. Specifically, on June 18, 2006, in Boatyard Lake in Baldwin County [a] game warden and marine police officers arrested a subject who agreed to become a confidential informant. The informant immediately agreed to cooperate, and DEA Task Force Officer (now Sgt.) Jeff Dunn was called to the scene. The informant told Dunn that he had

(Continued)

11

been getting methamphetamine ice through a connection he made at Woerner Manufacturing in Elberta when he worked there almost a year earlier. The informant smoked marijuana with Lilo Trough there, and Trough asked him if he wanted cocaine. The informant said no, and Trough asked him about methamphetamine ice. The informant expressed an interest, and Trough brought him a sample. The informant told Trough that if he could get that quality at a good price, he would be interested in selling it. Trough began to produce two ounces a week for $1,500 per ounce. After about two months, Trough went missing for a week or so. The informant was left with $3,000 in drug proceeds, and he suspected that Gabriel Lopez was Trough's connection based on his observation of Trough and Lopez together. The informant finally asked Lopez where Trough was, and after the second occasion, Lopez came back to the informant with an interpreter. Lopez told the informant that he would get someone else to supply the informant, that Trough was out of the picture, and that he would drop the price to $1,300 per ounce. The informant paid Lopez the $3,000 for the last two ounce[s] Trough supplied.

The informant met the new contact, "Jose," who was subsequently identified as Jose Jesus Castrejon, and began to receive larger amounts of methamphetamine ice over the next several months. Beginning in about February of 2005, Castrejon brought him three and four ounces at a time, then a half-pound once a week, then on two occasions, he got a pound each time from Castrejon. During his dealings with Castrejon, the informant noticed that there were two grades of drugs, one better quality than the other. Castrejon told the informant that he had another source in addition to Gabriel Lopez. This proved Castrejon's downfall, because Lopez came to the informant's house near Bay Minette with another employee from Woerner, Ernesto, to inform the informant that Castrejon was also out of the picture.

.      .      .

The parties do not agree on the drug amount for which the defendant is accountable, and have agreed to allow the Court to make that determination at the time of the sentencing.

(Doc. 27, at 1-6 & 7(some emphasis supplied).)

the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt." (*Id.*)

4.  On June 30, 2008, Castrejon entered a counseled guilty plea to Count One of the Indictment. (Doc. 57, Guilty Plea Transcript.)

> THE COURT:  Mr. Castrejon, what is your full name?
>
> DEFENDANT CASTREJON:  Jose Castrejon.
>
> THE COURT:  And how old [are] you?
>
> DEFENDANT CASTREJON:  33 – I'm sorry – 37.
>
> THE COURT:  And how far did you go in school?
>
> DEFENDANT CASTREJON (in English):  High school.
>
> THE COURT:  Have either of you ever been treated recently for any mental illness or addiction to narcotic drugs?
>
> .      .      .
>
> DEFENDANT CASTREJON:  No.
>
> THE COURT:  Are either of you currently under the influence of any drug, medication, or alcoholic beverage?
>
> .      .      .
>
> DEFENDANT CASTREJON:  No.
>
> THE COURT:  Have each of you received a copy of the indictment or information; that is, the written charges pending against you?
>
> .      .      .
>
> DEFENDANT CASTREJON:  Yes.

THE COURT:        And do you understand the charge that's pending against you?

.        .        .

DEFENDANT CASTREJON:        Yes, ma'am.

THE COURT:        And have you fully discussed those charges and the case in general with your attorney?

.        .        .

DEFENDANT CASTREJON:        Yes, ma'am.

.        .        .

THE COURT:        All right. Mr. Castrejon and Mr. Hunt, are each of you fully satisfied with the counsel, representation and advice given to you in your case by your attorney?

.        .        .

DEFENDANT CASTREJON:        Yes.

THE COURT:        . . . Now, I have been provided with a plea agreement and a factual resume for each of you and I want you to take a look at those documents and tell me on the record whether that is you plea agreement and factual resume and whether you signed those documents.

.        .        .

THE COURT:        Mr. Castrejon, is that your plea agreement and factual resume and did you sign those documents?

DEFENDANT CASTREJON:        Yes.

THE COURT:     . . . Did each of you have the opportunity to read and discuss the plea agreement with your attorney before you signed it?

.     .     .

DEFENDANT CASTREJON (in English):     Yes, ma'am.

THE COURT:     Do you have any agreements with the United States Government concerning your case that are not written down in this plea agreement?

.     .     .

DEFENDANT CASTREJON:     No.

THE COURT:     Do you understand the terms of your plea agreement?

.     .     .

DEFENDANT CASTREJON:     Yes.

THE COURT:     Has anyone made any other or different promises or assurances to you of any kind in an effort to induce you to plead guilty in your case?

.     .     .

DEFENDANT CASTREJON:     No.

THE COURT:     Do you understand that certain of the terms of the plea agreement are merely recommendations to the Court and that I can reject those recommendations without permitting you to withdraw your plea of guilty and impose a sentence that's more severe than you might anticipate?

.     .     .

DEFENDANT CASTREJON (in English):     Yes, ma'am.

THE COURT:        Has anyone attempted in any way to force you to plead guilty in your case?

.        .        .

DEFENDANT CASTREJON:        No.

THE COURT:        Are you pleading guilty of your own free will because you are guilty?

.        .        .

DEFENDANT CASTREJON:        Yes, ma'am.

THE COURT:        Do each of you understand that the offense to which you're pleading guilty is a felony offense and that if your plea is accepted, you will be adjudged guilty of that offense and that such adjudication may deprive you of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury, the right to possess any kind of firearm, and if yours is a drug case it could entail the loss of certain federal benefits, and if you are not a citizen it could entail deportation.  Do you understand those possible consequences of your guilty plea?

.        .        .

DEFENDANT CASTREJON (in English):        Yes, ma'am.

.        .        .

THE COURT: []. Mr. Castrejon, in your case the maximum penalty the Court could impose is a minimum 10 years up to life imprisonment, a fine not to exceed $4 million, a term of supervised release of five years which would follow any term of imprisonment, and if you violated the conditions of supervised release you could be in prison for that entire term as well, and a mandatory special assessment of $100. Do you understand those possible consequences of your guilty plea?

DEFENDANT CASTREJON:        Yes, ma'am.

THE COURT:        . . . Under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to consider in determining the sentence in a criminal case. Have you and your attorney talked about how the sentencing guidelines might affect your sentence?

.        .        .

DEFENDANT CASTREJON:        Yes.

THE COURT:        Do you understand that the Court will not be able to determine the advisory guidelines sentencing range until a presentence report has been completed by the probation office and you and the government have had the opportunity to challenge the  reported facts and the application of the guidelines recommended by the probation office and that the sentencing guideline range determined by the Court may be different from any estimate your attorney or anybody else might have given you in this case?

.        .        .

DEFENDANT CASTREJON:        Yes, ma'am.

THE COURT:        All right. Do you understand that after your guideline range has been determined, the guidelines themselves further provide for departures either upwards or downwards from that range in certain circumstances?

.        .        .

DEFENDANT CASTREJON (in English):        Yes, ma'am.

THE COURT:        And do you further understand that although the Court is required to consider the guidelines when determining the sentence, the guidelines are advisory and do not necessarily control the sentence imposed?

.        .        .

DEFENDANT CASTREJON (in English):     Yes, ma'am.

THE COURT:     Do you understand that in the federal system parole has been abolished and if you are sentenced to prison you will not be released on parole?

.    .    .

DEFENDANT CASTREJON (in English):     Yes, ma'am.

THE COURT:     Do you understand that under some circumstances you or the government may have the right to appeal any sentence that I impose; however, each of your plea agreements contains a limited waiver of the right to appeal the sentence itself and in your plea agreement you have retained the right to appeal or to file a post-conviction proceeding only if punishment is imposed in excess of the statutory maximum, if punishment is imposed that constitutes an upward departure from the guideline range, or if you have a claim of ineffective assistance of counsel? Do you understand that you have waived your right to appeal or to file a post-conviction proceeding in all but those three circumstances outlined in your plea agreement?

.    .    .

DEFENDANT CASTREJON (in English):     Yes, ma'am.

THE COURT:     Do you understand that you have a right to plead not guilty to any offense charged against you and to persist in that plea, that you would then have the right to a trial by jury, at that trial you would be presumed to be innocent and the government would have to prove your guilt beyond a reasonable doubt, you would have the right to the assistance of counsel for your defense, the right to see and hear all of the witnesses and have them cross-examined in your defense, the right on your own part to decline to testify unless you voluntarily elected to do so in your own defense, and the right to the issuance of subpoenas to compel the attendance of witnesses to testify in your defense?

.    .    .

DEFENDANT CASTREJON:     Yes, ma'am.

THE COURT:     And do you understand that if you went to trial and decided not to testify or to put on any evidence at all, those facts could not be used against you?

.     .     .

DEFENDANT CASTREJON:     Yes, ma'am.

THE COURT:     Do you further understand that by entering a plea of guilty, if that plea is accepted by the Court, there will be no trial and you will have waived or given up your right to a trial as well as those other rights associated with a trial that I've just described?

.     .     .

DEFENDANT CASTREJON (in English):     Yes, ma'am.

.     .     .

THE COURT:     All right. And, Mr. Castrejon, in your case you are charged with violating Title 21, United States Code, Section 846, conspiracy to possess with intent to distribute methamphetamine. And in order to convict you of that offense the United States would have to prove that two or more individuals came to a mutual understanding to commit an unlawful act – in this case possession with intent to distribute methamphetamine – and that you, knowing the unlawful purpose of the act, knowingly and intentionally joined in the plan.

The government has alleged more than 500 grams of methamphetamine were involved in the conspiracy, but I understand that you and the government do not agree on the amount and that that will be left for sentencing.

Do you understand the elements of the offense that must be proven?

DEFENDANT CASTREJON (in English): Yes, ma'am.

THE COURT: Now, I asked each of you earlier if you had signed the factual resume attached to your plea agreement. You said you had. And I want to make sure that you understand that by signing that factual resume you are agreeing that the government could prove the facts set forth in that document in order to support your guilty plea. Do you understand and agree to that?

.    .    .

DEFENDANT CASTREJON (in English): Yes, ma'am.

THE COURT: I have read those, so I will now ask you how do you plead to the charge, guilty or not guilty?

.    .    .

DEFENDANT CASTREJON (in English): I'm guilty.

THE COURT: It is the finding of the Court in the case of United States versus Jason Hardy Hunt and in the case of United States versus Jose Jesus Castrejon that each defendant is fully competent and capable of entering an informed plea, that each defendant is aware of the nature of the charges and the consequences of the plea and that the pleas of guilty are knowing and voluntary pleas supported by an independent basis in fact containing each of the essential elements of the offense. The pleas are therefore accepted and each defendant is now adjudged guilty of that offense.

(*Id*. at 4, 4-5, 5, 7, 7-8, 8, 9, 9-10, 10, 10-11, 11, 11-12, 12, 12-13, 13, 14-15, 15 & 15-16.)

5.    The Presentence Investigation Report was prepared by the Probation Office on November 14, 2008 and provided to the parties. (*See* Doc. 33, at 1.) This sealed

report was filed with the Court on December 8, 2008. (*See id*.)[2]  Castrejon's retained

attorneys (*see* Doc. 16, at 1) did not file any objections to the presentence report (*see*

Docket Sheet).

   6.   A sentencing hearing was conducted on December 19, 2008, during which

the following occurred:

> THE COURT:    The probation office has determined this is a base offense level of 38. Acceptance of responsibility brings it to a 35. Zero criminal history points.  And criminal history category of one. Resulting in a 168 to 210 [month sentence]. There is a ten-year mandatory minimum in this case.

> And I have received no 5(k); is that correct?

> MS. BEDWELL:    That's correct, at this time, Your Honor.

> THE COURT:    And also received no objections from the defense. In fact says there are no objections. Is there anything else I need to hear from you?

> MS. TURNER:    No, ma'am.

---

[2]    With respect to base offense level, the report provides, as follows: "The guideline for an offense charged under 21 U.S.C. § 846 is found at U.S.S.G. § 2D1.1. In consideration of U.S.S.G. § 1B1.3(a), Relevant Conduct provides that: (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; (1)(B) all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity; and (2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) that were part of the same course of conduct or common scheme or plan as the offense of conviction, are included in the calculations for the base offense level. Pursuant to U.S.S.G. § 2D1.1(c)(1), offenses involving at least 1.5 kilograms or more of "Ice," have a base offense level of 38." (Doc. 33, at 9.)

THE COURT: The PSI indicated perhaps there was a dispute over the amounts. But I never received any objection over the amount of drugs involved.

. . .

MS. BEDWELL: That's correct, Your Honor. I spoke with Mr. Bullard to confirm that he had no objections. And he confirmed for me that there were no objections and indicated that Mary [Turner] . . . would be standing in for him today.

THE COURT: All right. I will hear from you, Ms. Turner, anything you would like to say on behalf of your client or any witnesses.

MS. TURNER: We have no witnesses.

THE COURT: Would you like to stand and say anything on behalf of your client?

MS. TURNER: Yes. . . . Mr. Castrejon has been in the United States for over 20 years. He cooperated with the government when he was arrested[] [a]nd admitted to responsibility for the sale of the methamphetamine. And he would . . . also like to help the government further . . . for some 5(k) at a later date.

THE COURT: Well, the 5(k) occurs today.

MS. TURNER: Okay.

THE COURT: Or not at all.

MS. BEDWELL: There is a Rule 35 provision in the plea agreement, Your Honor.

THE COURT: Okay. Is that something that is being worked on?

MS. BEDWELL: It's possible that we could eventually utilize the information provided by the defendant. But we had

some concerns that he was possibly not being completely truthful about the extent of his involvement and his knowledge. He admitted to the activities that we knew about, but didn't provide us with any new information or anything that would give us any viable leads to pursue at this time.

So we have left the door open in accordance with the terms of the plea agreement. But that's incumbent on him to come forward with additional information.

THE COURT:     All right. Ms. Turner, do you and Mr. Bullard understand that? That basically you are the ones that are going to have to develop this with them and get back with the government?

MS. TURNER:     Right.

THE COURT:     Otherwise your client, who has no criminal history, is going to be serving 168 months unless you follow-up.

MS. TURNER:     Yes.

THE COURT:     All right. Anything else? Would your client like to make a statement?

THE INTERPRETER:     What does that mean?

THE COURT:     If you would like to say anything to the Court, now is your opportunity to say anything you would like to say.

THE DEFENDANT:     Yes.

THE COURT:     You don't have to, but if you would like to say anything.

.     .     .

THE DEFENDANT: I want to say I am feeling really bad. Because, you know, but I did it. And I made a big mistake and try

to sell those drugs. And in Houston I've got [no] problems with the laws in all of my life. So I say sorry. But that's to you. And you know, . . . I love God[,] I believe in God. And I know this is a bad experience for me in jail. And I pretty soon . . . I need to be with my family to take care of my kids. So I thank you for everything, you know. And I'm sorry for what I did.

THE COURT:          Do you understand that the government is still interested in you cooperating with them? Do you understand that?

THE DEFENDANT:          Yes.

THE COURT:          You don't have to answer me. I want to make sure you understand that part. And that you can still cooperate with the government and they will be willing to file a motion for a reduced sentence later on. But in order for you to be able to do that you have to be truthful with them and fully forthcoming with them.

THE DEFENDANT:          Yeah.

THE COURT:          You understand? All right.

THE INTERPRETER:          Okay. I just want to say yes, I have always been truthful and I have always told the truth. At first I was afraid because the people that give me those drugs said they were going to hurt me. Now I'm very willing to cooperate. I have given the names of my people, those people that gave me the drugs to sell. But now I have my children and I know I can do a little bit more. But I want to protect my children. I want to make sure nobody sells drugs to my children.

THE COURT:          Okay. Ms. Bedwell, did you have anything you would like to say?

MS. BEDWELL:          Your Honor, given the statutory factors that the Court should consider, this offense is a very serious one. The nature and characteristic[s] of the offense certainly suggest that a sentence within the guideline range is appropriate. And the government submits that the information in the presentence

investigation report suggests a sentence within the guidelines, the advisory guideline range.

In accordance with the plea agreement we submit to the Court that a sentence at the low end of the advisory guideline range is one that is a reasonable sentence and certainly not greater than necessary to achieve the sentencing objectives which are contained in 3553(a).

THE COURT:        Okay. Well, I have considered the seriousness of the offense. Quite frankly I did not see in the report enough evidence to support the four kilograms or the 1.5 kilograms to hold this defendant responsible. But since there is an agreement to that I would find that amount.

What I did see in the report is this man has no prior criminal history. He was involved in a significant methamphetamine distribution. But he also has been working consistent jobs his entire life . . . .

Based on that I do find there is a need to protect the public. But, as always, the 3553 factors are no . . . greater than necessary to meet the objectives of punishment and deterrence.

And considering that this is a first time offense I am going to sentence him to the mandatory minimum in this case. If you will stand I will read your sentence.

Pursuant to the Sentencing Reform Act of 1984, it's the judgment of the Court that Jose Castrejon is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 120 months as to Count 1 of the indictment.

Upon release from imprisonment you are placed on supervised release for a term of five years. Immediately after incarceration you are to be delivered to an immigration official to be considered for deportation. If you are deported, [you are] to remain outside the United States. If you are not deported[, you are] to report to the probation office.

You are prohibited from possessing a firearm or other dangerous device and shall not possess a controlled substance. You also cannot commit any federal, state or local crimes. In addition you will abide by the standard conditions of release.

I find that you don't have the ability to pay a fine, so a fine is not imposed.

I find that the advisory guideline range is greater than necessary to address the sentencing factors of 3553[] [a]nd[, therefore,] sentence you to the mandatory minimum.

It's ordered that the defendant pay a special assessment in the amount of a hundred dollars which shall be due immediately.

I will hear your objections[.]

MS. TURNER:        We have no objections.

THE COURT:        From the government?

MS. BEDWELL:        Your Honor, the government objects to the sentence imposed by the Court as an unreasonable variance below the advisory guideline range and one which is contrary to the evidence and the information contained in the report bearing on the 3553(a) factors.

THE COURT:        Okay. Noted. Mr. Castrejon, you have ten days to file a notice of appeal. If you wish to appeal you must file it ten days from judgment. And your attorney can assist you in doing the same. If he does not wish to appeal you must file a notice of non-appeal and you can receive that from Ms. Aycox.

You need to discuss that with your client before you leave here today to determine what his wishes are.

MS. TURNER:        Thank you.

THE COURT:        The remaining counts are dismissed. I believe those are counts 2, 3 and 4.

MS. BEDWELL:      So [] moved.

(Doc. 50, at 2-3, 3-5 & 6-10.)

7.      Final judgment was entered on January 6, 2009 committing Castrejon to the custody of the United States Bureau of Prisons for a term of 120 months as to Count One of the indictment. (Doc. 34.)

8.      On January 13, 2009, Castrejon file a *pro se* pleading construed by the Court as written notice of appeal (*see* Docs. 35-37) along with a motion for appointment of counsel (Doc. 38). Six days later, Castrejon's retained counsel, William Bullard, Esquire, filed a motion to withdraw. (Doc. 39.) Following a hearing on February 5, 2009 (Doc. 51; *see also* Doc. 41 (order setting hearing for February 5, 2009)), Bullard was allowed to withdraw (Doc. 51, at 4)[3] and the Court appointed Arthur Madden, Esquire to represent Castrejon on appeal (Doc. 48). After a limited remand for determination of whether Castrejon should be excused from his delay in filing his notice of appeal (*see* Docs. 58-59 & 61-62), the Eleventh Circuit, on March 9, 2010, issued an eight page unpublished opinion affirming Castrejon's conviction and sentence (Doc. 75).

> Castrejon was indicted by a grand jury for one count of conspiracy to possess with intent to distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1), two substantive

---

[3]      During this hearing, Castrejon requested the Court's assistance with respect to his desire to cooperate with the government. (*See id.* at 5-6.) The Court informed Castrejon that counsel was being appointed to represent him on appeal and "to assist [him] in [his] effort to cooperate." (*Id.* at 6.) "But you have to understand one thing, see, regardless of what I might want to do, I cannot force the government to let you cooperate. I am appointing you counsel so that they perhaps can talk with the government about possible cooperation." (*Id.*)

counts under the same statute, and one forfeiture count. The indictment alleged that the conspiracy covered the period from early 2005 to 17 March 2008. He pled guilty to the conspiracy count pursuant to a written plea agreement, and the remainder of the counts were dismissed. The plea agreement stated that the maximum penalty that could be imposed was 10 years to life imprisonment. In the plea agreement, Castrejon agreed that the factual resume filed with the plea agreement was true and correct.

The factual resume detailed transactions with confidential informants in 2008 involving a total of approximately 198 grams. It also indicated that, in 2005, Castrejon had provided another informant with methamphetamine, beginning with three to four ounces at a time and including two occasions on which he delivered one pound. Finally, it noted that the "parties do not agree on the drug amount for which the defendant is accountable, and have agreed to allow the Court to make that determination at the time of the sentencing."

At the guilty plea hearing, Castrejon indicated that he understood the terms of his plea agreement. The district court informed him that the "maximum penalty the Court could impose is a minimum 10 years up to life imprisonment," and he indicated that he understood. In explaining the charges to Castrejon, the court stated that the "government has alleged more than 500 grams of methamphetamine were involved in the conspiracy, but I understand that you and the government do not agree on the amount and that that will be left for sentencing." Finally, the court confirmed that Castrejon understood and agreed that by signing the factual resume, he was agreeing that the government could prove the facts set forth in it.

Following the hearing, the probation officer prepared a PSI, which noted that the parties did not agree on the drug amount. However, the probation officer also stated that the government's records reflect that Castrejon was involved with 4.508 kilograms, and, therefore, the probation officer stated he would use that amount in calculating the guidelines range. The probation officer determined that Castrejon's base offense level was 38 because the offense involved 1.5 kilograms or more of "Ice" methamphetamine. After a three-level reduction for acceptance of responsibility, his total offense level was 35. Because he had no criminal history—a criminal history category of I—his guidelines range was 168 to 210 months. The PSI also indicated that the statutory minimum was 10 years and the maximum was life imprisonment. In his written response to

the PSI, Castrejon stated that he had no objections and that he adopted "the application and determination of sentencing factors and the guidelines calculations contained therein."

At the sentencing hearing, the court noted that it had not received any objections from the defense then stated that the "PSI indicated perhaps there was a dispute over the amounts. But I never received any objections over the amount of drugs involved." The government responded, "That's correct, your Honor. I spoke with [the defendant's attorney] to confirm that he had no objections. And he confirmed for me that there were no objections and indicated that [another attorney] would be standing in for him today." When imposing Castrejon's sentence, the court commented, "Quite frankly I did not see in the [PSI] enough evidence to support the four kilograms or the 1.5 kilograms to hold this defendant responsible. But since there is an agreement to that I would find that amount." In light of the fact that this was his first offense and he had a consistent work history, the court sentenced him to the mandatory minimum sentence of 10 years' imprisonment, which was below the guidelines range. When asked for objections, Castrejon responded that he had no objections.

[]

On appeal, Castrejon argues that because the district court that accepted his guilty plea acquiesced in the parties' agreement to defer the determination of statutory drug quantity until sentencing, the court could not comply with the requirement of Rule 11 that he be informed of both the maximum possible penalty and the mandatory minimum penalty. He does not, however, suggest that the court committed Rule 11 error during the guilty plea hearing. Instead, he argues that the Rule 11 error occurred when the district court failed to make the statutory drug quantity determination at sentencing. He asserts that the court reluctantly adopted the PSI's guideline calculation of drug quantity because there were no objections to the amount, not because there was sufficient evidence to support that amount, but maintains that his failure to object to the drug quantity calculation for purposes of calculating his guidelines range should not be interpreted as his acquiescence to that amount in the context of establishing the drug quantity for purposes of § 841(b). Therefore, he asserts that he is entitled to plain error relief because (1) his substantial rights were affected because the imposition of a mandatory minimum sentence without a finding that it should have applied limited the court's

sentencing discretion, (2) a conviction based on evidence that the court found "frankly" insufficient seriously affects the fairness, integrity, or public reputation of judicial proceedings, and (3) he would not have bargained for a deferred determination of the statutory drug amount and associated minimum and maximum penalties if he had intended to plead guilty to a ten-year mandatory minimum sentence.

We review a Rule 11 error raised for the first time on appeal for plain error. Under plain error review, the defendant has the burden to show that: (1) there is an error, (2) that is plain or obvious, (3) affecting the defendant's substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings. We may consider the whole record when considering whether Rule 11 error occurred or prejudiced the defendant.

In order to show that his substantial rights were affected, a "defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea. The fact that a defendant did not move to withdraw his guilty plea upon learning of a mistake suggests that he cannot make this required showing.

However, we are precluded "from reviewing an issue raised on appeal if it has been *waived* through the doctrine of invited error." The "doctrine of invited error is implicated when a party induces or invites the district court into making an error." We have applied the doctrine to alleged errors in the plea process that were not corrected at sentencing, as well as to alleged errors that originated at sentencing.

In this case, the doctrine of invited error applies. Castrejon was aware that the determination of the applicable drug amount was being deferred until the sentencing hearing; however, rather than filing objections to the PSI's use of more than 1.5 kilograms in its calculations, he filed a response with the court stating that he "adopt[ed] the application and determination of sentencing factors and the guidelines calculations contained therein." As a result of his adoption of the PSI's calculations, the district court, at sentencing, acquiesced in the use of that drug amount even though it questioned whether there was sufficient evidence to support finding him responsible for it. Thus, Castrejon invited any error that he alleges occurred, and we will not review his claim.

[]

> Castrejon's appeal based upon the district court's alleged failure to comply with Rule 11 is predicated upon invited error. Accordingly, we reject Castrejon's appeal and **AFFIRM** his conviction and sentence.

(*Id.* at 2-8 (internal citations omitted; emphasis in original).)

9. Castrejon filed the instant motion to vacate, pursuant to 28 U.S.C. § 2255, on February 24, 2011. (Doc. 77.) Therein, petitioner raises the following claims: (1) he was constructively denied effective assistance of counsel because counsel failed to notify him of his right to contact the Mexican Consulate; (2) counsel failed to present the argument that there can be no conspiracy without an agreement between two or more culpable conspirators; and (3) counsel ineffectively negotiated the plea of guilty and his plea was involuntary and unknowing given the fact that he thought his sentence would be reduced based upon his cooperation.[4]

10. The United States filed its response in opposition on March 30, 2011 and therein contends that petitioner's claims of ineffective assistance of trial counsel have no merit and, moreover, that all claims are due to be rejected in light of the fact that Castrejon's plea was knowingly and voluntarily entered. (*See* Doc. 80.)

---

[4] Embedded in his brief in support of his § 2255 motion is petitioner's argument that "counsel did not object to the PSR to challenge insufficient evidence regarding the quantity of drugs, attributable to the petitioner. The Probation Officer recommended that the Base Offense Level is 38 without evidence, even though the parties did not agree on the drug amount for which the petitioner is accountable." (Doc. 77, at 9-10.) In addition, petitioner argues that counsel should have requested safety-valve relief. (*Id.* at 10-11.)

11.     Petitioner filed his reply to the government's response on June 8, 2011.

(Doc. 85.)

The Petitioner Castrejon was prejudiced by his defense counsel's deficient performance in failing to notify the defendant of his right under the Vienna Convention to contact the Mexican consulate, and failing to raise the issue with the trial Court, if petitioner could make credible assertion of the assistance that the consulate would have provided to Castrejon, petitioner had special need for services typically within power of consulate, in light of need to locate a Mexican Witness[], suppress the statements he made because the statements were made involuntarily and explain consequences of guilty plea.

.       .       .

Defense counsel was unable to assist the petitioner in understanding the charges and the consequences of a plea. The record shows that Castrejon[] did not understand the charges against him and his options, and that he was involuntarily and unknowingly pleaded guilty. Petitioner's guilty plea to conspiracy was not "voluntary," as required by due process clause, where petitioner was affirmatively misinformed about elements of offense to which he pleaded guilty.

.       .       .

Petitioner was denied his right to effective assistance of counsel where counsel induced Castrejon to enter into a Plea Agreement by telling petitioner that government had agreed to reduce his sentence, and Petitioner[] had mistakenly concluded that the only way to avoid the possibility of a life sentence was to enter a guilty plea.

Viewing the voluntariness of the plea issue as a mixed case of law and facts, the government found that the evidence at the hearing before Honorable Chief Judge Callie V.S. Granade overwhelmingly indicated that Castrejon pleaded guilty because of the assurances of his counsel that he would receive a sentence reduction.

.       .       .

The evidence was insufficient to show that anyone other than a government informant was involved with petitioner in an agreement to possess with intent to distribute more than 500 grams of a mixture and substance containing of methamphetamine and therefore was insufficient to support petitioner's conviction of conspiracy to possess with intent to distribute. The Counsel did not argue that you cannot have a conspiracy without an agreement between two or more culpable conspirators. If there are only two members of a conspiracy, neither may be a government agent or informant who aims to frustrate the conspiracy. The government may prove the existence of an agreement by circumstantial evidence through "inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme."

In this case, [one] do[es] not find sufficient evidence of the relevant agreement between Castrejon and anyone other than a government informant, during the relevant time period[,] [w]hich is insufficient to support a conviction for conspiracy. [I]t takes at least two to conspire neither of which may be government agents or informers. And the government failed to show evidence and/or discovery to show that anyone other than a government informant was involved with petitioner in an agreement[.]

.       .       .

Defense counsel was ineffective in failing to object to petitioner's drug conspiracy sentence on ground that amount of drugs attributed to him[] [e]ven though the parties did not agree on the drug amount for which the petitioner is accountable. The government alleged that this conflict had been resolved. In the record indicates that the District Court's failure to inform him of the drug-quantity element affected his substantial rights. If the District Court complied with Rule 11, properly informed Castrejon of the quantity of drugs with which he was charged the result of the proceeding would have been different, and the petitioner would not have pleaded guilty and would have insisted on going to trial, and this conflict did not resolve.

The defense counsel did not object to the District Court plainly erred in sentencing drug conspiracy to the 120 months mandatory minimum, based on the Grand Jury's that the conspiracy was responsible for more than 500 grams of methamphetamine, and sentence should have been based on the quantity of drugs attributable to Castrejon.

.   .   .

Petitioner argued that the government had not submitted anything indicating that any of the information Mr. [C]astrejon provided the government during his debriefing was untrue. The government simply asserted that they did not believe he had provided them truthful and complete information, without providing any evidence to support such a belief.

The government did not articulate at the sentencing hearing why it believed Mr. Castrejon had not met the requirements of providing a true and complete statements to law enforcement.

It is undisputed that Mr. Castrejon met first four of five "safety Valve" criteria. The only issue in dispute was whether Mr. Castrejon "truthfully provided to the government all information and evidence the defendant had concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."

(*Id*. at 2, 4, 5, 5-6, 7-8 & 8.)


## CONCLUSIONS OF LAW

1.      28 U.S.C. § 2255 reads, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

2. In this instance, Castrejon contends that constitutionally ineffective assistance of counsel entitles him to the relief afforded by 28 U.S.C. § 2255.[5] In order to establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail." *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926, 122 S.Ct. 1295, 152 L.Ed.2d 208 (2002).[6] The *Strickland v. Washington* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

---

[5] Once a criminal defendant enters a guilty plea, he waives all non-jurisdictional challenges to the conviction's constitutionality and only an attack on the voluntary and knowing nature of the plea can be raised. *See McMann v. Richardson*, 397 U.S. 759, 772, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). Stated differently, "a voluntary and intelligent plea made by an accused person, who has been advised by **competent counsel**, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546-2547, 81 L.Ed.2d 437 (1984) (emphasis supplied). Therefore, when a § 2255 motion is filed collaterally challenging convictions obtained pursuant to guilty pleas, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989).

[6] It is proper in considering claims made by a federal prisoner under § 2255 to look for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254. *See Hagins v. United States*, 267 F.3d 1202, 1205 (11th Cir. 2001) (citing *Holladay v. Haley*, 209 F.3d 1243 (11th Cir. 2000)), *cert. denied*, 537 U.S. 1022, 123 S.Ct. 545, 154 L.Ed.2d 432 (2002).

> To succeed on such a claim, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).[7] In addition, the defendant must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370. In other words, . . . [a petitioner] "must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded [not] guilty and would . . . have insisted on going to trial." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.

*Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995) (footnote, brackets and ellipses added), *cert. denied sub nom. Coulter v. Jones*, 516 U.S. 1122, 116 S.Ct. 934, 133 L.Ed.2d 860 (1996). Indeed, in the guilty-plea context, the Eleventh Circuit has held that "'counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial.'" *Carter v. United States*, 288 Fed.Appx. 648, 649 (11th Cir. Aug. 4, 2008),[8] quoting *Wofford v. Wainwright*,

---

[7]     "When analyzing ineffective-assistance claims, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (citations omitted).

[8]     "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

748 F.2d 1505, 1508 (11th Cir. 1984).[9] Moreover, in the context of sentencing following entry of a guilty plea the court simply considers whether petitioner has established, in accordance with *Strickland, supra,* that his attorney was deficient and that he was prejudiced by this deficiency in performance. *See, e.g., Myers v. United States,* 2009 WL 1505638, *1 (W.D. Pa. 2009) ("In order for petitioner to succeed on an ineffective assistance of counsel claim, he must prove: (1) that his counsel was deficient; and (2) that he was prejudiced by his counsel's deficiency."), *aff'd,* 364 Fed.Appx. 769 (3rd Cir. 2010), *cert. denied,* ___ U.S. ___, 131 S.Ct. 1026, 178 L.Ed.2d 848 (2011).

3.     When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds."  *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub nom. Oats v. Moore*, 527 U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d 243 (1999); *see also Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

4.      Before addressing the merits of any of petitioner's claims of ineffective assistance of counsel, the undersigned need reiterate that "[a] defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the

---

[9]      Thus, "'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Johnson, supra,* 256 F.3d at 1176 (citation omitted).

conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (citation omitted). This waiver includes claims of ineffective assistance of counsel that do not implicate the decision to plead guilty. *Id.*; *see also Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) ("Smith's guilty plea was voluntary and knowingly made, [thus] he cannot now attack the ineffectiveness of his counsel in any respects other than as the alleged ineffectiveness bears upon counsel's faulty advice that coerced a guilty plea."), *cert. denied sub nom. Smith v. McKaskle*, 466 U.S. 906, 104 S.Ct. 1685, 80 L.Ed.2d 159 (1984). As implicitly found by the Eleventh Circuit Court of Appeals (*see* Doc. 75), and as established by the record, Castrejon's guilty plea was knowingly and voluntarily entered.[10] Therefore, Castrejon has waived all claims of ineffective assistance of counsel

---

[10] To determine that a guilty plea is knowing and voluntary, a district court must comply with Rule 11 and address its three core concerns: "ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005) (citation omitted). As set out in the lengthy findings of fact, the Court confirmed during the Rule 11 colloquy that the plea was free from coercion, and that Castrejon understood the nature of the charges and the consequences of his plea. Petitioner's representations during the plea proceeding, along with those of his lawyer and the prosecutor, and the findings by the Court when accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); *see also Thompson v. Wainwright,* 787 F.2d 1447, 1460 (11th Cir. 1986) ("'[T]he representations of the defendant [at a plea hearing] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.'"), *cert. denied sub nom. Thompson v. Dugger*, 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 825 (1987). Indeed, "[t]here is a strong presumption that the statements made during the [plea] colloquy are true[,]" *United States v. Medlock,* 12 F.3d 185, 187 (11th Cir.), *cert. denied*, 513 U.S. 864, 115 S.Ct. 180, 130 L.Ed.2d 115 (1994), and, consequently, a defendant bears a "heavy burden" to show that his statements under oath were false, *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) (citation omitted). In this case, there can be no doubt but that Castrejon's plea of guilty is in fact lawful in that it was entered in accordance with applicable constitutional principles.

raised in his § 2255 motion that do not implicate the validity of the plea itself, *Wilson, supra*, namely that counsel was ineffective in failing to notify him of his right to contact the Mexican consulate,[11] and that counsel failed to present the argument that there can

---

[11]     Even if this claim of ineffective assistance of counsel has not been waived, petitioner cannot prevail because he can establish neither *Strickland* prong. Castrejon has not established that his attorney was deficient in failing to notify him of his right to contact the Mexican consulate inasmuch as Article 36 of the Vienna Convention "imposes no duty on defense counsel to notify a consulate as to the arrest of a foreign national. . . . Thus, Sanchez-Contreras' ineffective assistance of counsel claim as to this issue is without merit." *Sanchez-Contreras v. United States,* 2011 WL 939005, *4 (N.D.Iowa 2011). Moreover, Castrejon's conclusory allegations do not establish that had the Mexican consulate been contacted he would have pleaded not guilty and would have insisted on going to trial. The sole argument petitioner has made in this regard is that he needed the help of the consulate to locate a Mexican witness, to suppress his statements, and to explain the consequences of his plea. (Doc. 85, at 2.) However, Castrejon's arguments are of no moment because he has not identified the witness in Mexico with whom the consulate could have communicated or how this witness would have assisted in his defense, *see Sandoval v. United States,* 574 F.3d 847, 851 (7th Cir. 2009) ("Sandoval [] contends that the consulate could have communicated with Spanish-speaking defense witnesses located in Mexico. We find this argument unpersuasive because Sandoval failed to show how these unidentified witnesses would have assisted in his defense at trial."); he has not shown that his statements would have been suppressed, *compare Sanchez-Llamas v. Oregon,* 548 U.S. 331, 349, 126 S.Ct. 2669, 2681, 165 L.Ed.2d 557 (2006) ("The failure to inform a defendant of his Article 36 rights is unlikely, with any frequency, to produce unreliable confessions. And unlike the search-and-seizure context—where the need to obtain valuable evidence may tempt authorities to transgress Fourth Amendment limitations—police win little, if any, practical advantage from violating Article 36. Suppression would be a vastly disproportionate remedy for an Article 36 violation.")  *with United States v. Longo,* 280 Fed.Appx. 914, 915 (11th Cir. June 6, 2008) ("Longo [] argues that his rights under Article 36 of the Vienna Convention on Consular Relations [] were violated because the government failed to advise him of his right to a Canadian lawyer; he says that statements he made should be suppressed and that his case should be remanded so the district court can determine whether he was prejudiced by the violation. We have concluded that the VCCR does not confer judicially enforceable individual rights and, therefore, that the only remedies for a violation of the VCCR are diplomatic, political, or derived from international law. Because Longo does not have an enforceable individual right under the VCCR, the remedies he seeks for the alleged violation are unavailable to him; and his argument for remand fails." (internal citations omitted)); and *United States v. Lombera-Camorlinga,* 206 F.3d 882, 883 & 886 (9th Cir.) (Vienna Convention does not create an individual right enforceable by way of a motion to suppress evidence of post-arrest statements made by a foreign national before being advised of the right to notification of his consulate), *cert. denied,* 531 U.S. 991, 121 S.Ct. 481, 148 L.Ed.2d 455 (2000); and he has not demonstrated how contacting the consulate would have changed his understanding of the terms of the plea or changed his guilty plea, *compare United States v. Munoz,* 2010 WL 3732173, *5 (N.D. Okla. Sept. 20, 2010) ("Defendant's allegation that the Mexican consulate could [have] assisted with choices related to entry of his guilty plea is simply inadequate.") *with Garcia v. United States,* 2008 WL 4610042, *2 (W.D. N.C. Oct. 16, 2008) ("Like the defendant in *Murphy*, the petitioner offers no evidence to show how contacting the Mexican consulate would have (Continued)

be no conspiracy without an agreement between two or more culpable conspirators, *cf.*

*Wilson, supra,* 962 F.2d at 997 ("Pleading guilty necessarily admits the commission of the

crime, in this case, conspiracy, so Wilson was not free to challenge the fact that his

criminal activity involved more than one person." (internal citation omitted).)[12]

     5.    Petitioner claims that he was constructively denied the effective assistance

of counsel as trial counsel induced him to enter a plea agreement by telling him that the

government had agreed to reduce his sentence and he, therefore, mistakenly concluded

that the only way to avoid life imprisonment was to enter a guilty plea. (*Compare* Doc.

85, at 5 *with* Doc. 77, Memorandum, at 9.) As previously found, petitioner voluntarily

---

changed either his guilty plea or sentence. There is no evidence that the consulate would have provided 'proper legal counsel' if it had been notified, or that such counsel, if provided, would have altered the outcome of this case." (internal citations omitted)). Castrejon's inability to establish prejudice signals the denial of this claim of ineffective assistance of counsel.

    [12]    Again, even if it can be argued that this claim of ineffective assistance of counsel has not been waived, petitioner cannot establish that counsel was deficient in this regard because the factual resume, which petitioner affirmed during the guilty plea hearing that he signed, clearly establishes that Castrejon conspired with numerous individuals who were not informants, namely, Gabriel Lopez, an unidentified black male from Pensacola, and another unidentified source. *Compare Maldonado v. United States,* 2011 WL 2147619, *7 (M.D. Fla. May 31, 2011) ("Petitioner admitted that he conspired with Balaguer and Munoz, neither of whom are alleged to be government agents. As such, counsel was not deficient for failing to advise Petitioner, or to argue that, the conspiracy was only between a government agent and Petitioner because evidence existed that Petitioner conspired with non-government agents.") *with Gonzalez v. United States,* 2010 WL 4942967, *10 (S.D. Fla. Nov. 4, 2010) ("The movant is correct to the extent there can be no conspiracy involving only a defendant and government informer, because it takes two to conspire and the government informer is not a true conspirator. Notwithstanding, in this case, the evidence clearly shows that the movant conspired with numerous individuals, many of whom were not government informants; to wit: Juan Alameda, Earnest Pickett, Gilbert Guerrero, Steven Hartsfield. Accordingly, a conspiracy existed and counsel was not ineffective, pursuant to *Strickland,* for failing to pursue this claim."), *report & recommendation adopted by* 2010 WL 4940048 (S.D. Fla. Nov. 30, 2010).

and knowingly entered a guilty plea in this case in exchange for the government's agreement to dismiss two counts of possessing with intent to distribute a mixture and substance containing a detectable amount of methamphetamine in excess of 50 grams in violation of 21 U.S.C. § 841(a)(1) (*compare* Doc. 11, Indictment *with* Doc. 50, at 10 (court dismissed the remaining counts of the indictment)). In truth, Castrejon did face the possibility of life imprisonment under the statute upon conviction for conspiracy to possession with intent to distribute more than 500 grams of a mixture and substance containing a detectable amount of methamphetamine, *compare* 21 U.S.C. § 846 ("Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.") *with* 21 U.S.C. § 841(b)(1)(A) (viii) ("In the case of a violation of subsection (a) of this section[13] involving . . . 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers[,] such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life[.]" (footnote added)) and, in addition, he did receive a sentence reduction by pleading guilty. Ten years, the statutory mandatory minimum, is certainly less than life imprisonment—as well as less than the sentence Castrejon was facing under the

---

[13] Subsection (a) of § 841 makes it unlawful for any person to knowingly or intentionally distribute or possess with intent to distribute a controlled substance. 21 U.S.C. § 841(a)(1).

Guidelines-- and is the "reduced" sentence petitioner received. Accordingly, the undersigned finds that counsel was nothing but effective in counseling petitioner's guilty plea in this case.

6.      Finally, petitioner makes several arguments regarding his retained attorney's performance during the sentencing hearing. *See Wilson, supra,* 962 F.2d at 997 ("A defendant has a constitutional right to effective assistance of counsel at sentencing."). First, Castrejon contends that counsel should have objected to the 10-year statutory mandatory minimum sentence on the basis that the drugs properly attributable to him did not amount to 500 grams of a mixture or substance containing a detectable amount of methamphetamine. While it is true that Judge DuBose stated during sentencing that she did not see enough evidence in the pretrial report to suggest holding the defendant responsible for 1.5 kilograms of methamphetamine, to substantiate the mandatory minimum sentence under the statute, there need only be evidence that petitioner was responsible for 500 grams (or more) of a mixture or substance containing a detectable amount of methamphetamine. The Eleventh Circuit attributed to Castrejon 198 grams of methamphetamine just based on the seven ounces of methamphetamine sold to the informant "couple" but did not make any calculations respecting the methamphetamine Castrejon sold in 2005 to another informant. Based upon information contained in the factual resume, which facts petitioner conceded the government could prove, Castrejon sold to this informant more than two and one-half (2½) pounds of methamphetamine. Since one pound of methamphetamine is the

equivalent of 453.5937 grams, combining this amount with the 198 grams sold to the informant "couple" clearly satisfies the 500 gram threshold for purposes of the mandatory minimum sentence of 10 years. Accordingly, petitioner's attorney was not deficient in failing to attack the amount of methamphetamine attributable to petitioner.

7.     Petitioner's final argument is that trial counsel provided constitutionally ineffective assistance in failing to seek safety-valve relief.    Under the safety-valve provision of the Sentencing Guidelines, "if a defendant convicted of certain drug crimes satisfies certain criteria, a district court shall impose a sentence without regard to any statutory mandatory minimum, 18 U.S.C. § 3553(f), U.S.S.G. § 5C1.2, and also give a two-level reduction in the defendant's offense level, U.S.S.G. § 2D1.1(b)(9)." *United States v. Lerma,* 255 Fed.Appx. 440, 442 (11th Cir. Nov. 19, 2007). The burden is the defendant's to show that he has met all of the safety valve factors, *United States v. Johnson*, 375 F.3d 1300, 1302 (11th Cir. 2004), the fifth and last of which requires him to establish that "he truthfully provided the government with all the information and evidence he had 'concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan.'" *United States v. Villegas-Ortiz*, 300 Fed.Appx. 718, 719 (11th Cir. Nov. 18, 2008), citing 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5), *cert. denied*, ___ U.S. ___, 129 S.Ct. 1644, 173 L.Ed.2d 1019 (2009); *see also id.* ("The fifth prong of the safety-valve provision places on the defendant 'an affirmative responsibility to truthfully disclose to the government all information and evidence that he has about the offense and all relevant conduct.'"). While the United States focuses its argument in this

regard on petitioner's failure to establish that he was being completely truthful and, consequently argues he was ineligible for a safety valve reduction (*see* Doc. 80, at 22-25), the undersigned finds no need to address this fifth prong of the safety-valve provision at any length[14] given that § 5C1.2 is inapplicable to Castrejon since the mandatory minimum for his conviction was lower than the bottom of his Guidelines range. *See United States v. Paz-Renigfo*, 230 Fed.Appx. 905, 908 n.2 & 909 (11th Cir. May 2, 2007). In other words, this case sets up the same scenario as that in *Paz-Renigfo*, such that had a 2-level reduction of petitioner's base offense level been granted by this Court, Castrejon's Guidelines range would have been 135-168 months' imprisonment, based on an offense level of 33, *see* U.S.S.G. Sentencing Table, and since the statutory mandatory minimum, which he received, was only 120 months, § 5C1.2 is inapplicable to Castrejon. Therefore, petitioner can establish neither prong of *Strickland* with respect to this alleged instance of ineffective assistance of counsel.

8.     In consideration of the foregoing, the Magistrate Judge recommends that the Court deny Castrejon's motion to vacate, set aside or correct his sentence under 28

---

[14]     To the extent it is necessary, the undersigned would note that the events transpiring at the sentencing hearing (*see* Doc. 50, at 7 ("Now I'm very willing to cooperate. . . . I know I can do a little bit more.")), and at a later hearing, reflect Castrejon's implicit (if not explicit) admission that he had not disclosed all information and evidence that he had about the offense and all relevant conduct, such that he cannot establish that he was prejudiced by his counsel's failure to request safety-valve relief. *See Patton v. United States*, 259 Fed.Appx. 194, 196-197 (11th Cir. Dec. 12, 2007) ("Because Patton was not willing to disclose *all information and evidence*, she can not show that she was prejudiced by her trial counsel's alleged failure to inform her and the district court of her potential eligibility for safety-valve relief.").

U.S.C. § 2255. Petitioner is not entitled to an evidentiary hearing in this case because his allegations are either affirmatively contradicted by the record or, otherwise, even taking the facts he states as true, same would not entitle him to relief. *Aron v. United States,* 291 F.3d 708, 714-715 (11th Cir. 2002) ("[I]f the petitioner 'alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim.' . . . Although we have stated that a district court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous, no such circumstances are present here." (internal citations omitted)); *see also United States v. Bejacmar,* 217 Fed.Appx. 919, 921 (11th Cir. Feb. 15, 2007) ("[I]f the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous, a district court is not required to hold an evidentiary hearing."); *see Tejada v. Dugger,* 941 F.2d 1551, 1559 (11th Cir. 1991) ("A petitioner is *not* entitled to an evidentiary hearing . . . 'when his claims are merely "conclusory allegations unsupported by specifics" or "contentions that in the face of the record are wholly incredible."'"), *cert. denied sub nom. Tejada v. Singletary,* 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992); *cf. Lynn v. United States,* 365 F.3d 1225, 1239 (11th Cir.) ("Because the 1999 affidavits submitted by Lynn amount to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the

issues and correctly denied Lynn's § 2255 motion."), *cert. denied,* 543 U.S. 891, 125 S.Ct. 167, 160 L.Ed.2d 154 (2004).

9.      Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1).  A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2).  Where, as here, a habeas petition is being denied  in part, on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling[,]" *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000), and, in even larger measure, on the merits of underlying constitutional claims, a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *id.; see also id*. at 483-484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial

46

showing of the denial of a constitutional right, a demonstration that, under Barefoot, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were '"adequate to deserve encouragement to proceed further."'"); *see Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). Inasmuch as it is clearly established that entry of a guilty plea waives all non-jurisdictional challenges to a conviction's constitutionality, *McMann v. Richardson, supra,* including claims of ineffective assistance of counsel that do not implicate the decision to plead guilty, *Wilson, supra*, a reasonable jurist could not conclude that this Court is in error for failing to reach the merits of petitioner's pre-plea ineffective-assistance-of-counsel claims, nor could a reasonable jurist conclude that petitioner should be allowed to proceed further with respect to these claims. *Slack, supra,* 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). Moreover, with respect to all (other) ineffective-assistance-of-counsel claims raised by petitioner the undersigned recommends that the Court find that reasonable jurists could not debate whether

Castrejon's § 2255 motion to vacate should be resolved in a different manner or that any of the remaining issues presented are adequate to deserve encouragement to proceed further. Accordingly, petitioner is not entitled to a certificate of appealability.

10. Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *See, e.g., Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request to vacate, set aside or correct his sentence (Doc. 77) should be **DENIED**. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate

Judge.

      **DONE** this the 28th day of June, 2011.

             s/WILLIAM E. CASSADY
             **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection.*  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).   The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[15] after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded).*  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[15]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).